UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Carmen O.-A., | ) |
| Plaintiff, | ) No. 23-cv-7842 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| LEE DUDEK, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carmen O.-A.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 14] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**A.    Procedural History**

Plaintiff protectively filed for Disability Insurance Benefits on January 27, 2017, alleging a disability onset date of June 9, 2016. [Administrative Record ("R.") 15.] On July 2, 2019, Plaintiff received an unfavorable decision from an Administrative Law Judge ("ALJ") [R. 15-26], which she appealed to this Court (N.D. Ill. Case No. 20-cv-3996). On August 20, 2021, the Court remanded this matter back to the Agency for further proceedings because the ALJ failed "to properly address Plaintiff's history of carpal tunnel syndrome and problems associated with the use of her hands." [R. 1139.] Upon remand, after a second Administrative Hearing (where a medical expert testified),

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    Plaintiff has filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision [Dkt. 12], which the Court construes as a motion for summary judgment.

the ALJ issued a second unfavorable decision, dated July 22, 2022. [R. 1008-26.] The July 22, 2022 decision is now the final decision of the Commissioner under 20 C.F.R. §404.981; Plaintiff herein seeks review of the same. [Dkt. 1.]

**B.      Social Security Regulations and Standard of Review**

According to the Social Security Act (the "Act"), a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an Administrative Law Judge ("ALJ") must apply a sequential five-step test. *See* 20 C.F.R. § 404.1520(a). The ALJ must evaluate whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Langley v. O'Malley*, No. 22-cv-3008, 2024 WL 3649021, at *2 (7th Cir. Aug. 5, 2024) (citation omitted). The burden of proof is on the claimant for the first four steps. *Id*. at *3. At Step Five, the burden shifts to the agency to show that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (citing 20 C.F.R. § 416.960(c)(2)). The Act requires all applicants to prove they are disabled as of their date last insured to be eligible for benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th

Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (citation and quotation marks omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53.

C. **The ALJ's Decision**

At Step One of the ALJ's July 22, 2022 decision [R. 1008-26], the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 9, 2016 through her date last insured of December 31, 2021. [R. 1011.] At Step Two, the ALJ found Plaintiff had the severe impairments of fibromyalgia; rheumatoid arthritis; degenerative disc disease of the

3

cervical and lumbar spine; degenerative joint disease of the bilateral knees; carpal tunnel syndrome status post release; history of lupus; transient ischemic attack; obesity; anxiety disorder; and depressive disorder. [R. 1012.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 1012-16.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; frequently reach in all directions bilaterally and handle, finger, and feel bilaterally; never be around unprotected heights and heavy moving machinery; tolerate occasional exposure to extreme cold, extreme heat, and vibrations; understand, remember, and carry out simple 1-2 step instructions; tolerate occasional interaction with supervisors and coworkers, but no interaction with the general public on an ongoing and continuous basis; and she is able to adapt to routine workplace pressures and changes. [R. 1016.] At Step Four, the ALJ determined that Plaintiff was not capable of performing any of her past relevant work. [R. 1024.] At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 1025-26.] Accordingly, the ALJ found Plaintiff not disabled under the Act. [R. 1026.]

**D.     Discussion**

Plaintiff first argues the ALJ improperly disregarded the testimony of medical expert Gilberto Munoz, M.D., M.P.H., with respect to hand limitations and cane usage. Plaintiff next insists the ALJ improperly assessed the treating source statements. Finally, Plaintiff contends the ALJ failed to consider the combined effects of Plaintiff's impairments on her ability to stay on-task. The Court disagrees and addresses each of these contentions in turn.

### 1. The ALJ's Treatment of Dr. Munoz's Opinions was Proper with Respect to Hand Usage Limitations

At the second Administrative Hearing in this matter, the ALJ recruited an impartial medical expert, Gilberto Munoz, M.D., M.P.H., to testify in this matter.[3] During his testimony, Dr. Munoz explained that Plaintiff's remote history of carpal tunnel surgery, imaging, and clinical findings made during her consultative examination in February 2021 supported some reduced functioning. [R. 1055-57, referring to 2250-52.] The ALJ accepted Dr. Munoz's opinion, based in part on the February 2021 physical examination findings showing Plaintiff had slightly reduced grip strength in both hands and mildly reduced fine dexterity in the left hand, but normal ability to make a fist and normal fine dexterity in the right hand. [R. 1020, citing 2250, 2252.] Relying on Dr. Munoz's opinion, medical records, and prior administrative medical findings, the ALJ found that Plaintiff could frequently reach, handle, finger, and feel with both upper extremities. [R. 1016, 1056-58, 1106, 1123.]

The ALJ acknowledged, however, that the February 2021 consultative examination differed from physical examination findings dated both before and after that report. [R. 1020.] For example, the ALJ noted that, in May 2017, a consultative examiner found Plaintiff had no difficulty with fine or gross manipulation. [R. 1020, citing 543.] And despite occasional notations that Plaintiff had some swelling of the fingers, examination findings from 2017 showed no motor or sensory deficits, full strength in both hands, and normal range of motion in both upper extremities. [R. 1019, citing 876, 917, 929.] Additionally, although February 2021 findings demonstrated slight weakness, full strength throughout was again demonstrated soon after in April 2021. [R. 1019-20, citing 2404.]

---

[3] The primary role of a medical expert is to provide an impartial expert opinion on the medical evidence presented in a case. Medical experts are recruited by the Agency in a disability case for a variety of reasons, including, in part, "to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing" and to determine the claimant's residual functioning capacity. *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020) (citing HALLEX I-2-5-34(A)(2) (2016)).

5

Dr. Munoz's opinion did not support greater manipulative restrictions. Dr. Munoz testified that single examination findings were not good indicators of a person's ability to use their hands throughout the day, noting "[t]hat's why we rely on the – like an EMG, x-ray, MRI. They are more accurate." [R. 1058-59 (emphasis added).] Dr. Munoz further testified there was "no way" to measure the intensity of a person's subjective pain. [R. 1059.] Yet Plaintiff declares the only permissible conclusion "from this testimony, [is] that during the course of an eight-hour workday, frequent hand use would be impossible, just as Plaintiff asserted." [Dkt. 12 at 10.] But Dr. Munoz, though, said no such thing. He did not identify any test results, such as an EMG, x-ray, or MRI, indicating Plaintiff could not use her hands to the degree the ALJ indicated or indicating pain or other symptoms the ALJ had not acknowledged. Moreover, Plaintiff's argument assumes her allegations of pain enjoyed a presumption of truthfulness that the ALJ had to rebut. But Plaintiffs has the burden of proof to demonstrate she was disabled, and there is no presumption of truthfulness. 20 C.F.R. § 404.1512(a); *Langley*, 2024 WL 3649021, at *2 (burden of proof is on the claimant for the first four steps of ALJ's disability analysis); *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) ("There is no presumption of truthfulness for a claimant's subjective complaints.").

Although it is true that pain is a subjective symptom that cannot be objectively measured, 20 C.F.R. § 404.1529(c)(3), the fact that pain is subjective does not help Plaintiff carry her burden to prove her alleged functional restrictions, and she has identified no record evidence, including physician opinions, that support her allegation that she was limited to occasional use of her hands. Indeed, Plaintiff does not identify any evidence the ALJ ignored that would support greater functional loss than that found by the ALJ. In fact, although the ALJ did not cite to it, there is indeed evidence that supports the opposite. Physical examination findings from the consultative examiner, Plaintiff's treating pain management specialists, Plaintiff's treating rheumatologist, and other examiners, consistently showed Plaintiff maintained normal strength, sensation, and range of motion

6

in both hands during the relevant period. [R. 543-44 (consultative examiner); R. 730, 775-76, 2031, 2037, 2043, 2138-39, 2236-37 (pain specialists); R. 876, 887 917, 929, 1561, 1566, 1574, 2268 (rheumatologist); R. 2362, 2375, 2387 (others).] Plaintiff also last worked in 2016 at a job that required "typing eight hours a day[,]" and the record showed Plaintiff was still working "all day at the computer" in 2017. [R. 1044, 1813 ("She works all day at the computer and states she has been working ever since the new year"); R. 2249 (Plaintiff reported to her physician she did not stop working until April or July 2017).]

The Court finds no reversible error in the ALJ's treatment of Dr. Munoz's opinions on hand limitations.

### 2. The ALJ Appropriately Assessed Plaintiff's Need for a Cane

Next, Plaintiff argues the ALJ improperly ignored Dr. Munoz's testimony Plaintiff would require a cane for walking on uneven surfaces, but not in any other situation. [Dkt. 12 at 10.] This single-paragraph argument in Plaintiff's brief is a nonstarter.

Although Plaintiff claims the "record shows that [she] often uses a cane when ambulating distances or for balance" [*Id*. (citing R. 2248, 2250, 2380, 2383, 2470)], the record shows nothing of the sort. The cited pages only demonstrate Plaintiff used a cane during her consultative examination in February 2021. [R. 2248, 2250.] This was *the only notation of Plaintiff ever using a cane*, and the state agency medical physicians—upon whom the ALJ relied—reviewed that consultative report and nonetheless concluded the medical record did not support the use of a cane. [R. 1103, 1122.] Plaintiff's other citations are to medical records where she told her providers she *possessed* a cane, but not that she needed one or used one. [R. 2380, 2383, 2470.] On the contrary, in 2017, multiple physicians noted Plaintiff did not use an ambulatory aid. [R. 422, 541.] And again, in April 2021, Plaintiff told medical providers that she had a cane at home, but she did not use it. [R. 2378.] A physical therapist at that time even noted that Plaintiff walked independently, meaning

7

she had the ability to walk safely and in a timely manner without an assistive device. [R. 2379-80.]

While Dr. Munoz did testify Plaintiff needed a cane for walking on uneven surfaces only, and not in any other situation [R. 1059], and the ALJ did not specifically mention that testimony (nor was she required to), the ALJ did analyze whether Plaintiff needed an ambulatory device. The ALJ explained that physical examination findings showing consistently normal strength in both legs negated the "need for an assistive device for standing or ambulation." [R. 1020; *see e.g.*, R. 543, 731, 876, 917, 1566, 2076-77, 2138-39, 2231-38, 2267, 2367, 2379.] The ALJ also relied on the state agency medical consultants in finding Plaintiff did not need an assistive device. [R. 1022, citing 1103, 1122.] Thus, the ALJ connected the evidence of normal examination findings to her conclusion that the record did not indicate the need for an ambulatory device. This constitutes substantial evidence in support of her determination Plaintiff did not need a cane. Further, none of the jobs the ALJ cited at step five required walking on uneven surfaces. [R. 1026; *see* Dictionary of Occupational Titles: order clerk (DOT 209.567-014), inspector (DOT 669.687-014), carding machine operator (DOT 681.685-030).] Therefore, even if the ALJ found Plaintiff required a cane when walking on uneven surfaces, it would not have changed the ALJ's finding that Plaintiff was not disabled. The Court will not remand on this basis.

### 3. The ALJ Properly Rejected the Treating Source Opinions

Finally, Plaintiff argues the ALJ improperly rejected the opinions of her treating primary care physician, Dr. Capps, and her long-term treating rheumatologist, Dr. Sandler, who both offered limited opinions on the effect of pain on Plaintiff's functioning.

While Plaintiff makes much of the fact the ALJ did "[n]ot even bother[] to mention the regulatory guidelines," an ALJ need not do so. *See Warnell*, 97 F.4th at 1053. While it may have been helpful to have the applicable regulations at hand, it is in no way fatal that the ALJ did not recite them, if she followed them appropriately, which she did here. Under the "treating physician

8

rule," which has been superseded for later-filed applications, but applies here because Plaintiff's claim was filed in January 2017, if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]record," it is entitled to controlling weight. 20 C.F.R. 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

As to Dr. Capps, the record contains only *a single, partial* treatment note from her. [R. 955.] And although the residual functional capacity questionnaire completed by Dr. Capps [R. 956-59] asked many questions regarding Plaintiff's functioning, Dr. Capps *declined to answer all but one*: she opined only that Plaintiff's pain was severe enough to interfere with the attention and concentration needed to perform simple work tasks on a frequent basis, and she pointed to no treatment notes or medical findings in support of this opinion. [R. 956.] In fact, Dr. Capps noted she was unable to answer any of the remaining three pages of questions of the RFC questionnaire, and that she "referred patient to occupational therapy and for Functional Capacity Evaluation to properly complete questions [she] left unanswered." [R. 959.] This is in no way a well-supported opinion. The ALJ assigned no weight to Dr. Capps's opinion. [R. 1023.]

Similarly, Plaintiff's treating rheumatologist Dr. Sandler indicated she was "unable to assess" whether Plaintiff's conditions prevented her from sustaining work activity. [R. 856.] Nonetheless, she opined that Plaintiff's fatigue and pain could frequently impact her concentration and attention; Plaintiff would need to lie down at unpredictable intervals; and Plaintiff would be absent from work about three times per month. [R. 855-56.] The ALJ gave little weight to Dr. Sandler's opinion. [R. 1023.]

The ALJ found it significant that, despite both physicians being familiar with Plaintiff's conditions, both declined to offer more insight into Plaintiff's ability to work when asked. [*Id.*] Nevertheless, the ALJ further observed that the treatment notes and other medical evidence of record

did not support permanent off-task limitations. [*Id.*] Indeed, throughout her decision, the ALJ discussed medical evidence that showed Plaintiff's pain was not as severe as alleged. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of her decision may support conclusions in another portion of the decision). The ALJ noted that Plaintiff often complained of pain, but that she also reported significant improvement with medication and various injections. [R. 1018-19 (citing R. 340 (Plaintiff responding "exceptionally well" to injections); R. 728 (Plaintiff experienced 90% pain relief with injection).] With regards to Dr. Sandler's opinion, the ALJ further observed that Dr. Sandler did not cite any clinical findings or objective signs related to Plaintiff's hands or fingers; thus, her opinion that Plaintiff had difficulty with fine motor movement was left completely unsupported by any explanation. [R. 1022.] Because the opinions were not adequately explained and were inconsistent with medical evidence demonstrating significant improvement with treatment, the ALJ reasonably discounted the opinions. 20 C.F.R. § 404.1527(c)(3)-(4). The Court finds the ALJ provided valid reasons for determining these opinions were not entitled to controlling weight.

Plaintiff's argument that Dr. Capps's and Dr. Sandler's "findings are all consistent with treatment notes in the record from a variety of sources, including a rheumatologist and a pain management specialist" [Dkt. 12 at 15] simply does not hold water. The record shows Plaintiff complained of the same pain symptoms for many years. [R. 541, 2231.] Although she experienced a temporary increase in neck and back pain in late 2016 due to a motor vehicle accident, Plaintiff did "very well" in rehabilitation. [R. 332, 328.] Plaintiff received various injections that significantly improved her chronic pain. [R. 682, 728, 773, 2023, 2034, 2064.] Her pain management physicians also indicated Plaintiff obtained adequate pain relief from Tramadol. [R. 2044.] Dr. Sandler restarted plaintiff on arthritis drug Methotrexate and nerve pain medication Lyrica and continued her on the

10

same medications through the entire period at issue, nothing only some tenderness on examination. [R. 876-78, 889, 917, 929, 1539-40, 1575, 1560, 1566, 2270-71.] Significantly, after Dr. Sandler completed the questionnaire on Plaintiff's behalf in March 2019, Plaintiff received no follow-up care with Dr. Sandler (or presumably any other physician, based on the record) for her alleged pain for an entire year. [R. 1539.] Although Dr. Sandler told Plaintiff she could prescribe additional medication if Plaintiff's symptoms flared, there is no evidence Plaintiff sought additional or different medication. [R. 1558.]

Lastly, Plaintiff grossly mischaracterizes Dr. Munoz's statements in trying to bolster the opinions of her treating physicians. Dr. Munoz did *not* "indicate[] the need to defer to treating physicians regarding the effects of fibromyalgia and rheumatoid arthritis pain on work-related functioning" as Plaintiff argues. [Dkt. 12 at 14.] Rather, although Dr. Munoz testified that a treating physician might have more insight into their patient's pain, he clarified that even a treating physician "cannot say how much pain [an individual] has, but they can document that she's in pain." [R. 1060.] Both this statement and the ALJ's analysis of Plaintiff's subjective complaints of pain, with reference to the medical record, are consistent with the regulation's direction to ALJs to weigh allegations of subjective pain against multiple regulatory factors before accepting them. 20 C.F.R. § 404.1529(c)(3); *see Knox*, 327 F. App'x at 655.

Ultimately, the Court cannot overturn the ALJ's decision based on her consideration of the treating source opinions.

### 4. The ALJ Properly Addressed Off-Task Time in the RFC

Next, Plaintiff faults the ALJ for failing to consider the combined effects of her impairments. During the hearing, Plaintiff's counsel argued that opinions by her primary care provider Dr. Capps [R. 956] and rheumatologist Dr. Sandler, [R. 856] supported a conclusion that Plaintiff's pain prevented her from remaining on-task at work. [R. 1065.] The ALJ, though, addressed this argument

11

in her decision and explained why she did not include any work-related off-time functional restrictions within Plaintiff's RFC. The ALJ explained she disagreed with Dr. Capps's and Dr. Sandler's opinions that pain could interfere with Plaintiff's attention and concentration because "neither the treatment notes nor other medical evidence supports permanent off task limitations." [R. 1023.] The ALJ noted that Plaintiff's allegations of disabling pain were inconsistent with the record showing excellent response to treatment and normal examination findings. [R. 1018-20]; *see* 20 C.F.R. § 404.1529(c)(2)-(3).

Neither did the ALJ overlook Plaintiff's claimed symptoms from mental impairments. The ALJ found Plaintiff had moderate limitations in the broad functional category of concentrating, persisting, or maintaining pace. [R. 1015.] One examiner noted poor concentration, but all others consistently documented no problem with attention or logical thought processes. [R. 1015 (citing 313, 315, 323, 537, 544, 2131-33, 2247).] And, although Dr. Munoz stated Plaintiff's pain had the potential to cause her to be off task, he could not pinpoint an approximate percentage of time she would be off task because that number would be variable and dependent on the intensity and persistence of her alleged pain [R. 1060]; his testimony therefore does not undermine the ALJ's conclusion regarding off-task time, particularly because the ALJ found Plaintiff's pain was not as intense or persistent as Plaintiff alleged. Finally, the ALJ emphasized the record showed Plaintiff "maintained useful ability to focus attention and stay on task at a sustained rate." [R. 1015.] The ALJ explained that she accommodated Plaintiff's difficulty concentrating with a limitation to simple, one-to two-step instructions, a finding consistent with the prior administrative medical findings of state agency psychological consultants M.W. DiFonso, Psy.D., and Jeanne Yakin, Ph.D. [R. 1021, 1023 (citing R. 1111 ("cognitive and attentional skills are intact and adequate for simple one-two step as well as multiple step tasks"); R. 1126 (Plaintiff could "concentrate sufficiently to complete" one- and two-step tasks)).]

12

Ultimately, the Court finds Plaintiff's insistence that the ALJ erred by not finding a disabling off-task restriction is nothing but an improper request to reweigh evidence. *Warnell*, 97 F.4th at 1052-53 (court "will not reweigh the evidence"). It is not enough for Plaintiff to simply declare that a combination of impairments renders her disabled, as she has done. *See Thompson K. v. Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *8 (N.D. Ill. Oct. 25, 2023) (citing *Weaver v. Berryhill*, 746 F. App'x. 574, 579 (7th Cir. 2018)) ("[c]laimant has not specified how the combined impact of his other non-severe impairments would lead to additional RFC limitations, as was his burden, nor has he cited to evidence supporting further limitations from the combined effect of those impairments."). The Court finds the ALJ properly discounted Plaintiff's allegation of disabling pain and the opinions of Dr. Sandler and Dr. Capps, and she properly relied on the opinion of Dr. Munoz, the state agency consultants, and the medical evidence (which all constitute substantial evidence) in finding Plaintiff would not be off task. The Court will not remand on this basis.

**5. Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence and contains the requisite adequate logical bridges between the evidence and her conclusions. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 14] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: February 24, 2025

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge